**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| CHRISTINA COOKE, | * |
| Plaintiff, | * |
| v. | *  Case No.: 18-3701-PWG |
| CALIBER HOME LOANS, INC., *et al.*, | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff, Christina Cooke, filed a lawsuit on September 20, 2018 in the Circuit Court for Prince George's County against Defendants Caliber Home Loans, Inc. ("CHL"), TIAA Bank,[1] and a law firm, Orlans, P.C. ("Orlans"), alleging nine causes of action related to the foreclosure of her property. Compl. 1-2, ECF No. 1-2. The case was removed to this Court on November 30, 2018 on the basis of federal question jurisdiction. *See* Not. Removal 1, ECF No. 1. Defendants have jointly moved to dismiss the Complaint on the grounds of *res judicata* and for failure to state a claim upon which relief can be granted. Mot., ECF No. 14. I have reviewed the filings and find a hearing unnecessary. *See* Loc. R. 105.6 (D. Md. 2018). Because I find that Cooke's claims are precluded by *res judicata*, the Defendants' motion shall be GRANTED and this case shall be DISMISSED WITH PREJUDICE.

---

[1] Plaintiff specifically named TIAA FSB Holdings, Inc. and Everbank Financial Corp. as defendants. Compl. 1-2, ECF No. 1-2. Defendants advise that Everbank Financial Corp. is no longer an existing entity and TIAA FSB Holdings, Inc. has not had any direct involvement with the loan at issue, so TIAA Bank responded under a presumption that it is the intended Defendant, as it is the investor of the loan at issue. Mot. 1, n.1, ECF No. 14.

**BACKGROUND**

For purposes of considering a motion to dismiss, this Court accepts the facts that Plaintiff alleged in her Complaint as true. *See Aziz v. Alcoac*, 658 F.3d 388, 390 (4th Cir. 2011). In 2013, Cooke owned residential property in Landover, Maryland (the "Property"), which was the subject of a mortgage loan, as evidenced by a promissory note ("Note") payable to Caliber Funding LLC,[2] and secured by a Deed of Trust. Compl. ¶ 6. Caliber Funding LLC advised Cooke that the Note would likely be transferred to another servicer or investor. *Id.* at ¶ 7. Cooke's loan was insured by the Federal Housing Administration ("FHA"). *Id.* at ¶ 18. Cooke alleges that she paid her mortgage loan payments to CHL from 2013 until sometime in 2017, when she stopped making loan payments. *Id.* at ¶¶ 10-11.

On June 15, 2017, CHL issued a Notice of Intent to Foreclosure, claiming the loan went into default in February 2017, and there was an arrears of $7,911.84. *Id.* at ¶¶ 12, 17. Cooke alleges that the Notice stated that CHL was both the secured party and loan servicer. *Id.* On June 16, 2017, Prince George's County Land Records were updated with an Assignment of Mortgage/Deed of Trust that claimed MERS[3], as nominee for Caliber Funding LLC, assigned and transferred to CHL all of its rights to the mortgage. *Id.* at ¶ 13. On June 23, 2017, CHL executed a Deed of Appointment of Substitute Trustees that identified CHL as the beneficiary and holder of the promissory note "and purported to appoint several attorneys of the Orlans law firm as substitute trustees of the Deed of Trust." *Id.* at ¶ 16. Cooke alleges that prior to the foreclosure filing, she submitted a loss mitigation application, and she believed she was being considered for loss

---

[2] Cooke alleges that her understanding is that CHL and Caliber Funding LLC are separate and distinct legal entities, and CHL is the servicer of the mortgage loan. *Id.* at ¶¶ 7-8.

[3] MERS refers to the Mortgage Electronic Registration System, a database created by the mortgage banking industry that tracks ownership and servicing rights. *See Suss v. JP Morgan Chase Bank, N.A.*, Civil Action No. WMN–09–1627, 2010 WL 2733097, at *1 (D. Md. July 9, 2010).

mitigation options until days before the foreclosure sale on April 25, 2018. *Id.* at ¶¶ 22-23. She also alleges that she received no notice that her loss mitigation application had been denied or that a foreclosure sale was scheduled, and she only learned of the foreclosure sale from a third party who expressed a desire to buy her Property. *Id.* at ¶¶ 24-25.

Cooke states that her lender was required to hold, or attempt to hold, a face-to-face meeting with her prior to the loan becoming delinquent for three full months and prior to filing for foreclosure, and no Defendant attempted to hold such a meeting. *Id.* at ¶¶ 18-19, 21, 32. She contacted CHL and Orlans, on April 23 and 24, 2018, to advise them that she had not been notified of the foreclosure sale and had not been provided her required face-to-face meeting. *Id.* at ¶¶ 26-28. She also advised them that she had a buyer for her Property and could pay off the loan, she requested a payoff and reinstatement quote, and she asked to inspect the original note to verify that CHL was legally authorized to enforce it. *Id.* CHL acknowledged receipt of the inquiry on April 24, 2018, and the next day sent a letter disclosing EverBank (with incomplete contact information) as the owner of the loan. *Id.* at ¶¶ 31-32.[4]

On April 30, 2018, Cooke sent a letter to CHL and Orlans stating that the foreclosure was illegal and asking for proof of the notice of sale being mailed, whether CHL was in possession of the original note, and requesting an opportunity to inspect the original note as well as documentation to show that Defendants had complied with the face-to-face meeting requirement, if that was Defendants' contention. *Id.* at ¶ 33. CHL sent Cooke a letter on May 2, 2018[5] with

---

[4] I note, however, that Cooke also alleged that CHL failed to provide her with the identity of the owner of the loan within 10 business days of her request. Compl. ¶ 75.

[5] Some of the dates in the Complaint require me to make inferences. Later in her Complaint, Cooke alleges that CHL failed to acknowledge receipt within 5 days of receiving her letter dated April 30, 2018. Compl. ¶ 73. In paragraph 33, Cooke states: "By letter dated May 2, 2018, CHL responded to Plaintiff's inquiry from August 23, 2018." *Id.* at ¶ 34. Putting these two allegations together, I am interpreting the August 23, 2018 date as actually referring to her April 23, 2018 letter that she alleged in paragraph 28. Of note, Cooke also alleges that Orlans, on behalf of CHL, filed a foreclosure action in circuit court on August

some documentation. *Id.* at ¶¶ 34-35. CHL provided the certified mailing receipt of the notice of sale, which verified that Cooke did not receive the notice by certified mail, but CHL did not provide any evidence of the notice being sent by regular mail. *Id.* at ¶ 35. CHL claimed that it was exempt from the face-to-face requirement because its servicing centers were more than 200 miles from the Property.[6] *Id.* CHL also included a copy of a letter that it claimed to have mailed on May 22, 2017 that denied the application for loss mitigation. *Id.* CHL explained that it had not provided ongoing monthly statements on the loan because Cooke had filed for bankruptcy, and CHL had not received a signed, written request for statements after the discharge or dismissal of the bankruptcy. *Id.* at ¶ 36. Additionally, CHL explained that it would not make the note available for inspection until the loan had been paid in full or otherwise satisfied. *Id.*

Defendants filed a foreclosure action on the Property on August 3, 2017, and on June 15, 2018, the foreclosure sale was ratified by the circuit court. *Id.* at ¶¶ 106, 111. Cooke advised the third-party purchaser that she had a claim to title against the Property, it chose not to proceed with the purchase, and on September 17, 2018, Orlans filed a motion to default purchaser and allow resale of the Property. *Id.* at ¶¶ 113-115. Cooke did not file any exceptions to the sale or otherwise appeal the ratification. She filed her Complaint in the Circuit Court for Prince George's County, Maryland on or about September 20, 2018 alleging the following nine causes of action[7]:

---

3, 2018, and Cooke was served on August 7, 2018. *Id.* at ¶ 20. It is unclear whether these dates also should be read as "April" rather than August or if they relate to the year 2017, since she later alleges that the Defendants filed a foreclosure action on the Property on August 3, 2017 and that the foreclosure sale was ratified by the circuit court on June 15, 2018. *Id.* at ¶¶ 106, 111. However, it is clarified by Defendant's Motion Exhibit A, a copy of the Circuit Court's docket, which reports the filing date as August 3, 2017. ECF No. 14-2.

[6] Cooke disputes this, alleging that CHL has branches within 200 miles of the Property. Compl. ¶¶ 41-44, 122.

[7] The causes of action summarized by defendant: CHL – Counts Two, Four, Five, Six, Eight, Nine, and Ten; Orlans – Counts One, Two, Eight, Nine, and Ten; Everbank/TIAA – Counts Two, Four, Six, Seven (TIAA), Eight, Nine, Ten.

- Count One – Violations of Fair Debt Collection Practices Act ("FDCPA") (against Orlans)

- Count Two – Violations of Maryland Consumer Debt Collection Act ("MCDCA") (against Orlans, CHL, EverBank, TIAA)

- Count Four[8] – Violations of Maryland Mortgage Fraud Protection Act ("MMFPA") (against CHL, EverBank, TIAA)

- Count Five – Violations of Real Estate Settlement Procedures Act ("RESPA") (against CHL)

- Count Six – Violations of Truth in Lending Act ("TILA") (against CHL, EverBank, TIAA)

- Count Seven – Breach of Contract (against TIAA)

- Count Eight – Injunction (against all Defendants)

- Count Nine – Declaratory Judgment (against all Defendants)

- Count Ten – Violation of Real Property Article 7-105.1(b)(1) (against all Defendants)

The case was removed to this Court by the Defendants on November 30, 2018. ECF No. 1. After the filing of pre-motion letters setting forth Defendants' contentions and request to file motions to dismiss, Cooke was granted the option of amending her Complaint to resolve any of the discussed deficiencies, but she chose not to amend. Defendants then filed the pending motion, seeking dismissal with prejudice of Cooke's Complaint based on it being barred by *res judicata* and citing failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, Civil Action No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "'is to test

---

[8]  The Complaint does not allege a Count Three.

5

the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Rule 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

When reviewing a motion to dismiss, "[t]he court may consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Moreover, where the allegations in the complaint conflict with an attached written instrument, "the exhibit prevails." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *see Azimirad v. HSBC Mortg. Corp.*, No. DKC-10-2853, 2011 WL 1375970, at *2-3 (D. Md. Apr. 12, 2011). However, if the Court considers matters outside the pleadings, the Court must treat the motion as a motion for summary judgment. Fed. R. Civ. P. 12(d); *Syncrude Canada Ltd.*

*v. Highland Consulting Group, Inc.*, No. RDB-12-318, 2013 WL 139194, at *2 (D. Md. Jan. 10, 2013).

All claims rooted in fraud allegations are subject to a heightened pleading standard. Rule 9(b) states that "in alleging a fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake." Fed. R. Civ. P. 9(b). Such allegations of fraud typically "include the 'time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.'" *Piotrowski v. Wells Fargo Bank, N.A.*, No. DKC-11-3758, 2013 WL 247549, at *5 (D. Md. Jan. 22, 2013) (quoting *Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.*, 197 F. Supp. 2d 298, 313-14 (D. Md. 2000)).

**ANALYSIS**

Defendants' contend that all claims are barred by *res judicata* due to the ratification of the foreclosure sale. Mot. Mem. 5, ECF No. 14-1. Cooke argues that the foreclosure was an *in rem* proceeding in which she did not appear or make challenges, and therefore, the judgment can have no preclusive effect." Pl.'s Resp. 2-3, ECF No. 17.

*Res judicata* is ordinarily an affirmative defense, however, this Court may consider a motion to dismiss on the ground of *res judicata* by looking to the Complaint and taking judicial notice of records from a prior judicial proceeding, where, as here, there is no dispute regarding their accuracy. *See Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000) ("Although an affirmative defense such as res judicata may be raised under Rule 12(b)(6) 'only if it clearly appears on the face of the complaint,' when entertaining a motion to dismiss on the ground of res judicata, a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact.") (internal citations omitted).

Here, as referenced by Cooke in her Complaint, Orlans, as substitute trustees, filed a foreclosure action on behalf of Caliber and TIAA Bank in the Circuit Court for Prince George's County Maryland, Case No. CAEF17-17878. This Court may take judicial notice of the docket[9] and court records in the foreclosure case because they are public records that are central to the claims, and there is no dispute as to their authenticity. *See, e.g.*, *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F. 3d 176, 180 (4th Cir. 2009) ("In reviewing a Rule 12(b)(6) dismissal, we may properly take judicial notice of matters of public record." (citing *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004))); *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013) ("Under this exception, courts may consider 'relevant facts obtained from the public record,' so long as these facts are construed in light most favorable to the plaintiff along with the well pleaded allegations of the complaint.") (quoting *Papasan v. Allain*, 478 U.S. 265, 283 (1986)). When a federal court litigant asserts *res judicata* based on a state court judgment, "[the] federal court must give to [the] state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).

*Res judicata* "bars a party from suing on a claim that has already been litigated to a final judgment by that party or such party's privies and precludes the assertion by such parties of any legal theory, cause of action, or defense which could have been asserted in that action." *Reid v. New Century Mortg. Corp.*, No. AW-12-2083, 2012 WL 6562887, at *3 (D. Md. Dec. 13, 2012) (quoting *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 210 (4th Cir. 2009)) (citations omitted).

---

[9] A copy of the foreclosure case docket was attached to Defendants' motion as Exhibit A. ECF No. 14-2.

Under Maryland law, *res judicata*, or claim preclusion, provides grounds for dismissal if a defendant establishes that "(1) the present parties are the same or in privity with the parties to the earlier dispute, (2) the claim presented is identical to the one determined in the prior adjudication, and (3) there has been a final judgment on the merits." *Capel v. Countrywide Home Loans, Inc.*, No. WDQ-09-2374, 2010 WL 457534, at *3 (D. Md. Feb. 3, 2010) (citing *Anne Arundel Cty. Bd. of Educ. v. Norville*, 887 A.2d 1029, 1037 (Md. 2005)).

### I. Final Judgment

There is no dispute that the ratification of the sale in a foreclosure action is a final judgment on the merits. *See, e.g., Gordon v. Nationstar Mortgage LLC*, No. CIV. RWT 14-1361, 2015 WL 5165453, at *1 n.6 (D. Md. Sept. 2, 2015) (noting that "most cases applying Maryland law identify ratification of the sale as the final judgment in a foreclosure action") (citing cases).

### II. Parties are the same or in privity

"Privity in the *res judicata* sense generally involves a person so identified in interest with another that he represents the same legal right." *Jones v. HSBC Bank USA, N.A.*, No. RWT 09CV2904, 2011 WL 382371, at *5 (D. Md. Feb. 3, 2011) (quoting *Anyanwutaku v. Fleet Mortgage Group, Inc.,* 85 F. Supp. 2d 566, 572–73 (D. Md. 2000)). Cooke does not dispute that the Defendants, although not all named parties in the foreclosure case, have privity with the substitute trustees that filed the foreclosure action. Therefore, this element has also been satisfied.

### III. Identical Claims

Under Maryland law, courts apply the transaction test to determine whether claims are identical. *See Kent Cty. Bd. of Educ. v. Bilbrough*, 525 A.2d 232, 238 (Md. 1987). "Under the transaction test, a 'claim' includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the

claim arose." *Boyd v. Bowen*, 806 A.2d 314, 325 (Md. Ct. Spec. App. 2002) (citing *FWB Bank v. Richman*, 731 A.2d 916, 928 (Md. 1999)). Notably, *res judicata* bars not only claims from the original litigation, but also other claims that could have been brought in the original litigation. *Id.* at 326 (citing *Gertz v. Anne Arundel Cnty.*, 661 A.2d 1157, 1161 (Md. 1995)). If a claim or defense arose from the same series of transactions as the claim that was adjudicated, it may be precluded even if it was not asserted. *Skibicki v. Fairmont Plaza*, PWG-17-1366, 2018 WL 3862252, at *3 (D. Md. Aug. 14, 2018).

Cooke contends that because she did not appear and raise objections in the foreclosure action, it has no preclusive effect. Pl.'s Resp. 2-6. She argues that a foreclosure action in Maryland is ordinarily an *in rem* proceeding, and only "[w]hen the mortgagor voluntarily appears and raises objections" does the action result in "an *in personam* judgment with preclusive effect." *Id.* at 3 (quoting *Jones v. HSBC Bank USA, N.A.*, 444 F. App'x 640, 644-45 (4th Cir. 2011)). She also argues that because the prior judgment was "solely *in rem*" she is entitled to litigate her objections in a separate suit within three years of the sale. *Id.* (citing *Fairfax Sav., F.S.B. v. Kris Jen Ltd. P'ship*, 655 A.2d 1265, 1274 (Md. 1995) and *Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 802 (D. Md. 2013)). Defendants argue that although Cooke did not raise objections during the foreclosure proceeding, she could have raised her claims at that time, and the claims arise out of the same transaction, so she cannot raise a collateral attack on the foreclosure judgment now. Reply 2, ECF No. 19 (citing *Prudencio v. Capital One, N.A.*, No. PWG-16-2693, 2016 WL 6947016, at *3 (D. Md. Nov. 28, 2016); *Jones v. HSBC Bank USA, N.A.*, No. RWT 09CV2904, 2011 WL 382371, at *5 (D. Md. Feb. 3, 2011); and *Anyanwutaku*, 85 F. Supp. 2d at 571).

In Maryland, foreclosure proceedings are governed by the Maryland Real Property Code and the Maryland Rules. *Laney v. Maryland*, 842 A.2d 773, 780 (Md. 2004). Maryland law allows

10

for summary *in rem* foreclosure proceedings, in which the foreclosure sale is conducted pursuant to a power of sale in the deed of trust under the summary procedure authorized by Md. Code Real Property Art. § 7-105(a). *See Fairfax*, 655 A.2d at 1272. "In that type of proceeding a sale of the mortgaged property can be held in approximately twenty-one days after docketing." *G.E. Capital Mortg. Services, Inc. v. Levenson*, 657 A.2d 1170, 1178 (Md. 1995) (citing Md. Rules W72 and W74.a.2). However, since the time that *Fairfax* was decided, the Rules have changed, and the current Rules provide for much greater notice to the homeowner and for expanded challenges to the foreclosure. *See Arrington v. Ocwen Loan Servicing, LLC*, 2019 WL 7190500, at *6 (Md. Ct. Spec. App. Dec. 26, 2019) (describing the differences between the current rules and those in effect at the time *Fairfax* was decided in 1995); *see also Maddox v. Cohn*, 36 A.3d 426, 431 (Md. 2012)("Both the legislative acts and the amendments to the Rules were designed primarily to protect the interests of residential homeowners in the foreclosure process."). Importantly, with the combination of the more extensive service requirements and expanded ability to respond, courts have more recently considered that the "Order to Docket" that commences a foreclosure action is a pleading, and it must be served on the borrower/homeowner. *Id.* at *9 (citing Md. Rules 1-321, 14-209).

Cooke's Complaint includes allegations that she received notice of the intent to foreclose in June 2017, she was served a few days after the foreclosure action was filed in circuit court in August 2017, she was aware of the ongoing foreclosure procedures, she presented her claims to Defendants, she had prior knowledge of the foreclosure sale, and she complained to Defendants that the foreclosure sale was illegal a few days after it occurred. *See, e.g.*, Compl. ¶¶ 12, 20, 22-33.

There is no doubt that the state court foreclosure action and the present case relate to the same transaction or occurrence: the Note and Deed of Trust on the Property, the foreclosure action that resulted when Cooke failed to make payments, and the propriety of the foreclosure sale. Under the foreclosure proceeding, Cooke had at least three means of challenging the foreclosure: "obtaining a pre-sale injunction pursuant to Maryland Rule 14–209(b)(1), filing post-sale exceptions to the ratification of the sale under Maryland Rule 14–305(d), and the filing of post-sale ratification exceptions to the auditor's statement of account pursuant to Maryland Rule 2–543(g), (h)." *Jones v. Rosenberg*, 940 A.2d 1109, 1115 (Md. Ct. Spec. App. 2008) (quoting *Wells Fargo Home Mortgage, Inc. v. Neal*, 922 A.2d 538, 550 (Md. 2007)). Upon ratification of a foreclosure sale, objections to its propriety are no longer entertained; final ratification is *res judicata* as to the validity of the sale, and it cannot be attacked in collateral proceedings. *Manigan v. Burson*, 862 A.2d 1037, 1040-41 (Md. Ct. Spec. App. 2004). "The State can do no more than give the litigant 'a day in court'; if he does not utilize it but suffers the decision to go against him by default, he is as conclusively and finally bound by it, as though he had actively contested it." *Id.* at 1041 (citation omitted); *see also Greenbriar Condominium, Phase I Council of Unit Owners, Inc. v. Brooks*, 878 A.2d 528, 563 (Md. 2005) (noting that the property owner's obligation is "to prosecute his rights, not to sit on them").

Certainly, as Cooke argues, "not all claims raised in a subsequent suit that arise out of the same transaction or series of transactions at issue in a prior suit are barred." *Currie*, 950 F. Supp. 2d at 801. In *Currie*, the court determined that it was plausible that the relief requested by the plaintiff in the MMFPA claim would not contradict or nullify any essential foundation of the foreclosure. *Id.* at 801-802 (discussing whether an issue raised and not litigated is precluded by

12

collateral estoppel[10]). Cooke's reliance on *Markey* (quoting *Pennoyer v. Neff*, 95 U.S. 714 (1878))—for the proposition that a voluntary appearance is required—is misplaced, since Ms. Markey was never personally served in the foreclosure proceeding, *and* she never voluntarily appeared, so the court had no personal jurisdiction, only *in rem* jurisdiction. *See Markey v. Wells Fargo Bank, N.A.*, Case No.: PWG-18-1867, 2019 WL 1282075, *4-6 (D. Md. Mar. 20, 2019). In *Jones v. HSBC Bank*, Jones had voluntarily appeared and raised numerous objections in the foreclosure action, but then chose not to appeal or seek revision of the state-court decision. 444 F. App'x at 645. The court held that the state-court foreclosure constituted an *in personam* final judgment on the merits, which precluded Jones from raising the same claims. *Id.* Jones also argued that Maryland's permissive counterclaim rules insulate from preclusion the claims that Jones could have raised but did not, and the court concluded that "to allow them in this case would, in effect, nullify the original foreclosure judgment. Avoiding such a consequence is a central concern of the claim preclusion doctrine." *Id.* at 644 n.3. *See also Bullock v. Ocwen Loan Servicing, LLC*, Civil No. PJM 14–3836, 2015 WL 5008773, at *6 (D. Md. Aug. 20, 2015) (barring the plaintiff's FDCPA, MCDCA, and MCPA claims by *res judicata* because they could have been asserted as counterclaims in the foreclosure action); *Coleman v. Countrywide Home Loans, Inc.*, Civil Case No. L–10–2297, 2010 WL 5055788, at *4 (D. Md. Dec. 3, 2010) ("To allow her now to claim damages stemming from the ratification of the foreclosure sale which she failed to contest would permit her impermissibly to attack a final judgment of the Circuit Court.").

---

10   Collateral estoppel, or issue preclusion, is a sub-species of *res judicata* that applies when a party raises in a successive lawsuit "an issue of fact or law actually litigated and resolved in a valid court determination essential to [a] prior judgment" and that party had "a full and fair opportunity to litigate," even if the issue "recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).

With these principles in mind, I must consider whether the order of ratification precludes Cooke from maintaining the specific claims that she has now pleaded, i.e., if the claims could have been raised in the foreclosure proceeding, they are now barred under *res judicata* unless some exception[11] exists.

First, Cooke brings a claim for violations of the FDCPA against Orlans, arising from the alleged failure to hold a required face-to-face meeting prior to initiating the foreclosure, and by not providing a certified copy of the Note or allowing her to inspect it. Compl. ¶¶ 39-50. Cooke is asserting that the foreclosure was improper, causing her damages and emotional distress. *Id.* at ¶ 49. Cooke's breach of contract action is based on the same allegations of failure to arrange a face-to-face meeting, thus not satisfying the conditions precedent to filing a foreclosure action and seeks specific performance as a result of the allegedly illegal foreclosure. *Id.* at ¶¶ 90-103. These claims could have been raised in the foreclosure proceedings, but were not, so are precluded from being raised now. *See Prudencio*, 2016 WL 6947016, at *3 (citing cases). Cooke's allegations of RESPA, MCDCA, and MCPA violations are similarly precluded as arising out of the same series of transactions as the state foreclosure proceeding. *Id.*; *Bullock*, 2015 WL 5008773, at *5-7.

Cooke also alleges that Defendants violated MMFPA and committed mortgage fraud by knowingly making deliberate misstatements and misrepresentations, including that they had complied with the conditions precedent to foreclose and were holders of the Note. Compl. ¶¶ 65-70. This claim also could have been raised and determined in the foreclosure proceeding and is precluded. *See Anyanwutaku*, 85 F. Supp. 2d at 571-72 (describing the factors that courts consider

---

[11] Such as extrinsic fraud or illegality. Md. Rule 2–535(a, b); *Pelletier v. Burson*, 73 A.3d 1180 (Md. Ct. Spec. App. 2013). There are no allegations here of Defendants preventing Cooke from raising her claims at any time.

when deciding whether claims are part of the same cause of action and concluding that the fraud and misrepresentation issues could have been raised in the foreclosure proceeding).

In Count Six, Cooke alleges TILA violations. Compl. ¶¶ 82-89. She alleges that Defendants failed to provide the correct or full name and contact information for the owner of the loan, failed to provide periodic mortgage statements, and CHL misrepresented that it was the secured party in June 2017. *Id.* Cooke seeks actual damages, statutory damages, attorneys' fees and costs. *Id.* at ¶ 89. All of these complained-of events occurred prior to the foreclosure action, so this claim could also have been raised in the foreclosure proceeding. The proper forum for raising claims about Defendants' failures related to the mortgage or foreclosure was at the foreclosure proceeding itself.

Cooke has withdrawn her Count Eight (Injunction) and Count Nine (Declaratory Judgment) claims because the property has been sold and the requests are moot. Pl.'s Resp. 2. That leaves Count Ten, Violation of Real Property Article 7-105.1(b)(1), which is asserted against all Defendants. Compl. ¶¶ 129-134. This cause of action is also predicated on Defendants not complying with conditions precedent to the foreclosure action and sale of the property. *Id.* Cooke certainly could have presented this claim prior to the ratification of the foreclosure sale. Therefore, this claim is also precluded under *res judicata*.

## CONCLUSION

In sum, the claims that Cooke raises in this lawsuit are precluded under Maryland law's transactional analysis approach. Because *res judicata* bars Cooke's claims, I will dismiss this case without reaching the alternative grounds Defendants raise for dismissal. Further, although Cooke was given an opportunity to amend her Complaint to resolve the deficiencies raised in the pre-motion filing letters, she chose not to amend, and *res judicata* makes amendment futile. Therefore,

Defendants' motion shall be granted, and Cooke's claims shall be dismissed with prejudice. A separate order will issue.

Dated: March 24, 2020  /S/
Paul W. Grimm
United States District Judge